# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GEORGE LEVY, Individually and on Behalf of Others Similarly Situated, | ] | **Civil Action No. 5:14-cv-580-OLG** |
| Plaintiffs, | ] | |
| v. | ] | |
| AERION RENTAL SERVICES, LLC, | ] | Class/Collective Action |
| Defendant. | ] | |

## UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS & COLLECTIVE ACTION SETTLEMENT

Respectfully submitted,

**BRUCKNER BURCH PLLC**

Richard J. (Rex) Burch
Texas Bar No. 24001807
*Attorney-In-Charge for Plaintiffs*
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone: (713) 877-8788
Telecopier: (713) 877-8065
rburch@brucknerburch.com

# Table of Contents

1. Introduction and Summary. ...................................................................................1

2. Background. ...........................................................................................................1

3. The Court's Role in the Approval Process. .........................................................2

   A.  Settlement Approval Under Rule 23. ..............................................................2

   B.  Approval of an FLSA Settlement. ...................................................................3

4. The Parties Proposed Settlement Should Be Approved. ...................................3

   A.  There is No Evidence of Fraud or Collusion. .................................................4

   B.  This Case is Complex, Would Be Expensive, and, In the Absence of Settlement, Would Last a Long, Long, Time. ...................................................................................................5

   C.  The Case is Advanced Enough, With Sufficient Discovery, for an Informed Settlement. .......6

   D.  The Settlement is Reasonable in Light of the Risks Faced by the Parties on the Merits. .........7

      1.  The Statute of Limitations is Eroding Most of the Class Members' Claims. .......................7

      2.  Achieving Class Certification Is Never Easy. ...............................................9

   E.  The Settlement is Reasonable Given The Range of Possible Recovery and Certainty of Damages. ...........................................................................................................10

   F.  The Named Plaintiff's Enhancement Payments Is Reasonable ...............................11

   G.  The Requested Attorney's Fees and Costs Are Reasonable .......................................12

   H.  The Proposed Notice Is Reasonable ........................................................................12

5. Provisional Certification of The Class Is Appropriate ...................................13

   A.  The Proposed Settlement Class Is Sufficiently Numerous .......................................13

   B.  The Commonality Requirement Is Met ....................................................................14

   C.  The Typicality Requirement Is Met .........................................................................15

   D.  The Adequacy Requirement Is Met .........................................................................15

   E.  Plaintiffs Satisfy Rule 23(b)(3)'s Requirements. ....................................................17

6. Conclusion. ..........................................................................................................18

# Table of Authorities

## Cases

*Ahearn v. Fibreboard Corp.*,
   162 F.R.D. 505 (E.D.Tex.1995) ............................................................................................6

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997) ..........................................................................................13, 16, 17

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ................................................................................ 3, 5, 6

*Belt v. EmCare, Inc.*,
   444 F.3d 403 (5th Cir. 2006) ................................................................................... 4, 6, 16

*Berger v. Compaq Computer Corp.*,
   257 F.3d 475 (5th Cir. 2001) ................................................................................... 15, 16

*Burford v. Cargill, Inc.*,
   CIV.A. 05-0283, 2012 WL 5472118 (W.D. La. Nov. 8, 2012) ..........................................16

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ............................................................................................13

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ................................................................................. 3, 6, 10

*DeHoyos v. Allstate Corp.*,
   240 F.R.D. 269 (W.D. Tex. 2007) ................................................................................ 9, 10

*Duran v. U.S. Bank Nat. Assn.*,
   59 Cal. 4th 1, 325 P.3d 916 (2014) .............................................................................. 6, 9

*Evans v. Jeff D.*,
   475 U.S. 717 (1986) ..........................................................................................................2

*Frew v. Hawkins*,
   3:93-CA-065 WWJ, 2007 WL 2667985 (E.D. Tex. Sept. 5, 2007) ......................................2

*Garza v. Sporting Goods Properties, Inc.*,
   CIV. A. SA-93-CA-108, 1996 WL 56247 (W.D. Tex. Feb. 6, 1996) ....................................4

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................................................... 17, 18

*Heffelfinger v. Elec. Data Sys. Corp.*,
    492 F. App'x 710 (9th Cir. 2012) ................................................................................ 14, 15

*Hoffmann v. Sbarro, Inc.*,
    982 F. Supp. 249 (S.D.N.Y. 1997) ...........................................................................................9

*Horton v. Goose Creek Indep. Sch. Dist.*,
    690 F.2d 470 (5th Cir. 1982) ..................................................................................................16

*In re Corrugated Container Antitrust Litig.*,
    659 F.2d 1322 (5th Cir. 1981) ..................................................................................................7

*In re Deepwater Horizon*,
    739 F.3d 790 (5th Cir. 2014) ...................................................................................................3

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
    851 F. Supp. 2d 1040 (S.D. Tex. 2012) ............................................................................ 10, 11

*In re OCA, Inc. Sec. & Derivative Litig.*,
    72 Fed. R. Serv. 3d 1060, 2009 WL 512081 (E.D. La. 2009) ....................................................4

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    962 F. Supp. 450(D.N.J. 1997) (. ..............................................................................................8

*In re Reliant Energy ERISA Litig.*,
    CIV.A. H-02-2051, 2005 WL 2000707 (S.D. Tex. Aug. 18, 2005) ...........................................16

*In re Shell Oil Refinery*,
    155 F.R.D. 552 (E.D. La. 1993) ................................................................................................4

*In re Wells Fargo Home Mortgage Overtime Pay Litig.*,
    571 F.3d 953 (9th Cir. 2009) ....................................................................................................9

*In Re: Scientific Drilling International, Inc., Fair Labor Standards Act (FLSA) Litigation*,
    --F.Supp.2d --, 2014 WL 2547079 (JPML June 4, 2014) .......................................................14

*Jenkins v. Raymark Indus., Inc.*,
    782 F.2d 468 (5th Cir. 1986) ..................................................................................................15

*Karvaly v. eBay, Inc.*,
    245 F.R.D. 71 (E.D.N.Y. 2007) ...............................................................................................16

*Kiefer v. Moran Foods, LLC*,
    12-CV-756 WGY, 2014 WL 3882504 (D. Conn. Aug. 5, 2014) .............................................17

*Klein v. O'Neal, Inc.*,
    705 F. Supp. 2d 632 (N.D. Tex. 2010) ....................................................................................10

iii

*Klier v. Elf Atochem N. Am., Inc.,*
    658 F.3d 468 (5th Cir. 2011) ........................................................................... 2

*Kurgan v. Chiro One Wellness Centers LLC,*
    10-CV-1899, 2014 WL 642092 (N.D. Ill. Feb. 19, 2014) .......................... 14, 15

*Lynn's Food Stores, Inc. v. United States,*
    679 F.2d 1350 (11th Cir.1982) ....................................................................... 3

*Macktal v. Sec'y of Labor,*
    923 F.2d 1150 (5th Cir. 1991) ....................................................................... 3

*Maher v. Zapata Corp.,*
    714 F.2d 436 (5th Cir. 1983) ....................................................................... 10

*McNamara v. Bre-X Minerals Ltd.,*
    214 F.R.D. 424 (E.D. Tex. 2002) ................................................................... 4

*Morris v. Affinity Health Plan, Inc.,*
    859 F. Supp. 2d 611 (S.D.N.Y. 2012) ...................................................... 11, 15

*Mullen v. Treasure Chest Casino, LLC,*
    186 F.3d 620 (5th Cir. 1999) ....................................................................... 14

*Newby v. Enron Corp.,*
    394 F.3d 296 (5th Cir. 2004) ......................................................................... 3

*Newman v. Stein,*
    464 F.2d 689 (2d Cir. 1972) ......................................................................... 10

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985) ............................................................................... 12, 13

*Reed v. Gen. Motors Corp.,*
    703 F.2d 170 (5th Cir. 1983) ......................................................................... 7

*Reyes v. Texas Ezpawn, L.P.,*
    459 F. Supp. 2d 546 (S.D. Tex. 2006) ........................................................ 7, 8

*Roussell v. Brinker Int'l, Inc.,*
    441 F. App'x 222 (5th Cir. 2011) ........................................................... 4, 6, 16

*San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio,*
    188 F.R.D. 433 (W.D. Tex. 1999) ................................................................. 10

*Sandoz v. Cingular Wireless LLC,*
    553 F.3d 913 (5th Cir. 2008) ......................................................................... 8

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,

    659 F.3d 234 (2d Cir. 2011) ................................................................................4

*Singer v. City of Waco, Tex.*,

    324 F.3d 813 (5th Cir. 2003) ..............................................................................8

*Stott v. Capital Fin. Servs., Inc.*,

    277 F.R.D. 316 (N.D. Tex. 2011) ....................................................................10

*Swigart v. Fifth Third Bank*,

    1:11-CV-88, 2014 WL 3447947 (S.D. Ohio July 11, 2014) ...............................5

*Turner v. Murphy Oil USA, Inc.*,

    472 F. Supp. 2d 830 (E.D. La. 2007) .......................................................... 4, 10

*Vela v. City of Houston*,

    276 F.3d 659 (5th Cir. 2001) ............................................................................12

*Wal-Mart Stores, Inc. v. Dukes*,

    131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) ......................................................14

*Young v. Sea Horse Venture IV, LLC*,

    3:07-CV-1818-M, 2009 WL 614823 (N.D. Tex. Mar. 10, 2009) ........................5

## Statutes

29 U.S.C.A. § 216(b) ................................................................................................12

29 U.S.C.A. § 255(a) ............................................................................................ 7, 8

29 U.S.C.A. § 256 ............................................................................................... 8, 11

## Rules

Fed. R. Civ. P. 23 ............................................................................................... 13, 14

Fed. R. Civ. P. 23(a)(1) ............................................................................................13

Fed. R. Civ. P. 23(a)(3) ............................................................................................15

## Regulations

29 C.F.R. § 825.106(b) ...............................................................................................2

**Other Authorities**

Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts*, 29 Berkeley J. Emp. & Lab. L. 269 (2008) ...............................................................................8

*Manual for Complex Litigation*, §30.42 (West Group 2001)........................................................12

Wage And Hour Law: Compliance & Practice, § 20:19.50 ...........................................................9

1.   INTRODUCTION AND SUMMARY.

This is a wage and hour case. Plaintiffs allege Aerion Rental Services LLC (Aerion) violated the Fair Labor Standards Act (FLSA), and several parallel state wage and hour laws, by failing to pay overtime to certain employees who Plaintiffs alleged were paid on an day-rate basis (the Class Members). After months of litigation, significant information exchange, negotiations, and mediation before an experienced mediator (William Lemons), the parties reached a settlement. *See* Exhibit 1, Joint Stipulation of Settlement and Release (Settlement).

The Settlement, reached by informed parties with the aid of an experienced mediator, will provide significant relief to the Class Members. As set forth herein, the proposed Settlement is fair, reasonable, and should be preliminarily approved and presented to the Class Members.

2.   BACKGROUND.

This is a class and collective action seeking unpaid wages owed under federal and state wage laws. Plaintiffs, on behalf of themselves and others similarly situated, allege Aerion permitted certain oil-field service workers to work 80+ hour workweeks without paying them any overtime. Instead, Plaintiffs allege Aerion paid these workers a flat amount per day. In other words, Plaintiffs allege Aerion: (1) failed to pay workers overtime as required by the Fair Labor Standards Act (FLSA); and (2) failed to pay overtime as required by North Dakota, Ohio, and Pennsylvania state law. *See* Dkt. 40 (Second Amended Complaint), *passim*. Plaintiffs sought certification of their case as an FLSA collective action for all similarly situated employees nationwide, and as Rule 23 classes for all similarly situated employees employed in North Dakota, Ohio, and Pennsylvania.

Aerion's primary defense is based on the claim that the "Motor Carrier Act exempts Plaintiffs from the overtime requirements of the FLSA." *See* Dkt. 27 (Answer) at p. 5, ¶ 2. Plaintiffs alleged this defense would defense would fail because they did not perform safety affecting work on motor

1

vehicles of the requisite size (more than 10,000 pounds) while those vehicles were transporting passengers or property in interstate commerce.

After a significant exchange of information, the parties mediated this case before William H. (Bill) Lemons, a highly experienced mediator. Mr. Lemons is the former section head of Cox Smith's labor and employment section. He has more than 25 years' experience as a labor and employment law advocate. Now a fulltime mediator and arbitrator, Mr. Lemons has mediated in excess of 800 complex disputes. In addition to being on the Large Complex Case and Employment Law Panels of the American Arbitration Association ("AAA"), he is also a Distinguished Neutral (Commercial, Insurance, and Employment Panels) of the International Institute for Conflict Prevention & Resolution ("CPR"). He served as the President of the Association of Attorney-Mediators, and a past Chair of the State Bar of Texas Alternative Dispute Resolution Section. Mr. Lemons is an approved Neutral on the panels of Kraft Foods Global, Inc., Coca Cola Refreshments USA, Inc., Southwest Airlines Co. (IAM and TWU panels), Toyota U.S.A., Inc., Mediation Works, Inc., Mediate.com, Dispute Solutions, Inc., Resolute Systems, LLC, the Metropolitan Transit Authority of Harris County, Texas and the Montana Labor Relations Board. With Mr. Lemons's assistance, the parties agreed to the Settlement at mediation.

## 3.   THE COURT'S ROLE IN THE APPROVAL PROCESS.

### A.   SETTLEMENT APPROVAL UNDER RULE 23.

"Rule 23 … wisely requires court approval of the terms of any settlement of a class action, but the power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed." *Evans v. Jeff D.*, 475 U.S. 717, 726 (1986); *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011). Thus, this Court has an important, though limited, role in the approval of "a proposed settlement in a class action." *Frew v. Hawkins*, 3:93-CA-065 WWJ, 2007 WL 2667985, at *2 (E.D. Tex. Sept. 5, 2007). In

reviewing a proposed settlement, a court "can either approve the … settlement as it was written, ob-tain the consent of the other two parties to a modified settlement, or reject the settlement." *Macktal v. Sec'y of Labor*, 923 F.2d 1150, 1155 (5th Cir. 1991). It "cannot take the negotiated settlement, strike terms [it] does not like, and then impose it on the parties." *Id.*

## B.   APPROVAL OF AN FLSA SETTLEMENT.

"Because, under the FLSA, parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date, FLSA collective actions do not implicate the same due process concerns as Rule 23 actions." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013). "Accordingly, the standard for approval of an FLSA settlement is lower than for a class ac-tion under Rule 23." *Id.* "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Id.* (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n. 8 (11th Cir.1982)). Where the settlement occurs in the context of a lawsuit, courts typically regard this "adversarial nature … to be an adequate indicator of the fairness of the settlement." *Id.*; *Lynn's Food Stores*, 679 F.2d at 1353–54. "If the proposed FLSA settlement reflects a reasonable compromise over contested issues, it should be approved." *Id.*

## 4.   THE PARTIES PROPOSED SETTLEMENT SHOULD BE APPROVED.

The Fifth Circuit recognizes – "particularly in class action suits" – that there is an "overriding public interest in favor of settlement[.]" *In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014). "The gravamen of an approvable proposed settlement is that it be 'fair, adequate, and reasonable and is not the product of collusion between the parties.'" *Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). At the first stage of the approval process, the Court need only "determine that the proposed settlement [1] appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class,

and [4] falls within the range of possible judicial approval." *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993) (punctuation and citations omitted). If these standards are met, "the Court directs that notice pursuant to Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement." *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002). The Settlement readily meets the standards for preliminary approval.

## A.   THERE IS NO EVIDENCE OF FRAUD OR COLLUSION.

"A strong presumption exists in favor of settlement if the district court determines that the settlement resulted from arms-length negotiations between experienced counsel and was not tainted by fraud or collusion." *Turner v. Murphy Oil USA, Inc.,* 472 F. Supp. 2d 830, 844 (E.D. La. 2007). In determining whether there is evidence of fraud or collusion, courts often begin by considering whether the parties are represented by experienced counsel. *See Garza v. Sporting Goods Properties, Inc.*, CIV. A. SA-93-CA-108, 1996 WL 56247, at *12 (W.D. Tex. Feb. 6, 1996). The Court should also consider the parties' representations of arm's length negotiations, particularly when they took place before an experienced mediator. *In re OCA, Inc. Sec. & Derivative Litig.*, 72 Fed. R. Serv. 3d 1060, 2009 WL 512081, at *10 (E.D. La. 2009).

All parties to this case are represented by experienced counsel. Lead Class Counsel is Richard J. (Rex) Burch of Bruckner Burch PLLC. *See* Exhibit 2, Declaration of Richard J. (Rex) Burch (Burch Dec.). Mr. Burch represented classes in several high profile, important wage and hour cases. *See, e.g., Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234 (2d Cir. 2011) (FLSA collective actions may be combined with Rule 23 class actions in same lawsuit); *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222 (5th Cir. 2011) (affirming jury verdict in favor of FLSA collective action plaintiffs); *Belt v. EmCare, Inc.*, 444 F.3d 403 (5th Cir. 2006) (affirming summary judgment in favor of nationwide class of FLSA plaintiffs). Courts have commented favorably on Bruckner Burch's work in a number

4

of wage and hour class actions.[1] Plaintiffs are also represented by Christopher McJunkin and Adam Poncio, two lawyers with years of experience. *See* Exhibit 3, Declaration of Chrisopher McJunkin (McJunkin Dec.) and Exhibit 4, Adam Poncio (Poncio Dec.). All counsel state unequivocally that negotiations were informed, and negotiated at arms' length. *See* Burch Decl. at ¶ 19; McJunkin Dec. at ¶ 15; Poncio Dec. at ¶ 17.

Aerion is represented by William Stukenberg of Jackson Lewis, a respected employment defense firm. Mr. Stukenberg has extensive experience and knowledge in the fields of class actions and labor and employment. *See, e.g., West v. Oil States Indus., Inc.*, No. 2:14-CV-126, 2014 WL 3696345 (S.D. Tex. July 23, 2014) (obtaining transfer of wage and hour collective action over Plaintiffs' objections); *Davis v. Mostyn Law Firm, P.C.*, No. 4:11-CV-02874, 2012 WL 163941 (S.D. Tex. Jan. 19, 2012) (Mr. Stukenberg defending well-known law firm in FLSA collective action).

Finally, as noted above, the parties mediated this case before William Lemons, an experienced mediator, ultimately reaching the Settlement.

### B.   THIS CASE IS COMPLEX, WOULD BE EXPENSIVE, AND, IN THE ABSENCE OF SETTLEMENT, WOULD LAST A LONG, LONG, TIME.

"Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Swigart v. Fifth Third Bank*, 1:11-CV-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014)(citing *Beckman*, 293 F.R.D. at 479–80 (S.D.N.Y.2013). "This is particularly true here, where

---

[1] *See, e.g., Girault v. Supersol 661 Amsterdam, LLC*, 1:11 CIV 6835 PAE, 2012 WL 2458172 (S.D.N.Y. June 28, 2012)("Bruckner Burch [has] years of experience prosecuting and settling wage and hour class actions, and are well-versed in wage and hour law and in class action law."); *Diaz v. Scores Holding Co.*, 07 CIV. 8718 THK, 2011 WL 6399468, at *5 (S.D.N.Y. July 11, 2011)("Bruckner Burch PLLC are experienced employment lawyers with good reputations among the employment law bar."); *Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323, 328 n.5 (N.D. Ill. 2010)(Bruckner Burch's attorneys "are highly experienced attorneys and have acted as class counsel in similar [wage and hour] actions in federal and state courts"); *Young v. Sea Horse Venture IV, LLC*, 3:07-CV-1818-M, 2009 WL 614823, at *3 (N.D. Tex. Mar. 10, 2009)(noting Bruckner Burch's "role in a number of precedent setting labor and employment cases").

Plaintiffs alleged overtime claims under the FLSA, and under [various] state laws" governing the payment of overtime. *Id.* "Resolving the procedural issues, the merits, and damages [is] risky, costly, and time consuming." *Id.*

There are well-known examples of wage and hour cases lasting more than a decade. *See, e.g., Duran v. U.S. Bank Nat. Assn.*, 59 Cal. 4th 1, 50, 325 P.3d 916, 946 (2014) (reversing certification following bench trial ruling in favor a class of plaintiffs and stating "a new trial will be required for both liability and restitution, and the trial court may entertain a new class certification motion"). Indeed, Plaintiffs' counsel have been involved in several wages cases that took years to resolve, even after *successful* determinations – such as a jury verdict in favor of the plaintiffs - on the merits. *See, e.g., Roussell,* 441 F. App'x at 222 (more than 6 years of litigation, including more than 2 ½ years of litigation after a jury verdict in plaintiffs' favor); *Belt,* 444 F.3d at 405 (nearly 2 years of litigation after summary judgment rendered in favor of plaintiffs).

## C.   THE CASE IS ADVANCED ENOUGH, WITH SUFFICIENT DISCOVERY, FOR AN INFORMED SETTLEMENT.

The extent of discovery needed in order for the parties to have sufficient information to make an informed and reasoned evaluation of the settlement and for the Court to be able to determine the fairness and adequacy of the compromise is left to the discretion of the Court. *See Cotton*, 559 F.2d at 1332-3. "Sufficiency of information does not depend on the amount of formal discovery that has been taken because other sources of information may be available to show the settlement may be approved even when little or no formal discovery has been completed."[2] *Id.* Further, the Court can consider any information available to the parties from prior or related proceedings. *See Ahearn v. Fi-*

---

[2]  "It is too often forgotten that a conference with or telephone call to opposing counsel may often achieve the results sought by formal discovery." *Cotton,* 559 F.2d at 1332.

*breboard Corp.*, 162 F.R.D. 505, 528 (E.D.Tex.1995) (class counsel was "thoroughly familiar" with the type of litigation at issue).

Plaintiffs' counsel represented a significant % of the class members, had access to other witnesses, and access to a substantial amount of Aerion' corporate policy information. *See* Burch Decl. at ¶¶ 11-15, 20. Moreover, Aerion provided comprehensive payroll information for the class members, allowing for a detailed assessment of the potential damages. *Id.* at ¶ 13. Given Plaintiffs had complete access of Aerion's payroll records, the applicable employment and payment policies, as well as numerous workers employed/paid under those policies, there is no doubt that Plaintiffs had sufficient information to reach a settlement in this wage-and-hour case. *Id.* at ¶ 15.

### D. THE SETTLEMENT IS REASONABLE IN LIGHT OF THE RISKS FACED BY THE PARTIES ON THE MERITS.

A district court "must not try the case in the settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)(internal quotation marks and alteration omitted). This factor favors approval of the settlement when the class's likelihood of success on the merits is questionable. *See In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1326–27 (5th Cir.1981) (affirming district court's finding that this factor favored approving the settlement when the class faced major obstacles in establishing proof of liability and damages). As set forth below, Plaintiffs faced both merits based and procedural challenges.

#### 1. *The Statute of Limitations is Eroding Most of the Class Members' Claims.*

"The FLSA generally provides for a two-year statute of limitations on actions to enforce its provisions, but allows a three-year limitations period for "a cause of action arising out of a willful violation." *Reyes v. Texas Ezpawn, L.P.*, 459 F. Supp. 2d 546, 565 (S.D. Tex. 2006) (quoting 29 U.S.C.A. § 255(a) (West)). "In order to take advantage of the longer statute of limitations period on

their claims, Plaintiffs bear the burden of proving that Defendant willfully violated the FLSA." *Id.* "Under the FLSA, a violation is 'willful' if the employer either knew or showed reckless disregard for whether its conduct was prohibited by the statute." *Singer v. City of Waco, Tex.*, 324 F.3d 813, 821 (5th Cir. 2003) (quotes and citations omitted). Significantly, potential class members' claims are not tolled by the filing of a collective action complaint. Instead, in an "FLSA collective action, the statute of limitations for a named plaintiff runs from the date that the plaintiff files the complaint, while the limitations period for an opt-in plaintiff runs from the opt-in date." *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916-17 (5th Cir. 2008).

This legal reality is particularly significant in this case because, even under Plaintiffs' view of the facts, Aerion took affirmative steps to correct the problem after this case was filed. In the absence of this Settlement, most of the Class Members would have their potential damages reduced simply due to the running of the statute of limitations.[3] *See, e.g.,* 29 U.S.C.A. §§ 255(a), 256(a). And this assumes the Class Members take action to protect their claims *immediately.*

And, in the absence of this Settlement, the likelihood is that most Class Members will not take any action at all (and will therefore recover nothing) even if a collective action is certified. Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts*, 29 Berkeley J. Emp. & Lab. L. 269, 294 (2008)(finding the average opt-in rate for the cases studied was a mere 15.71%). So without this Settlement, a significant percentage of the Class would have their claims extinguished altogether by the running of the statute of limitations. As such, a "swift resolution" was particularly important to the majority of the class members. *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 520 (D.N.J. 1997) ("swift resolution" supported approval

---

[3] And this assumes a motion for conditional certification could be filed, heard, and notice issued in time for potential class members to begin opting in by April 1, 2015, an impossibility at this point.

where delay would, as a practical matter, negatively impact the class members) *aff'd*, 148 F.3d 283 (3d Cir. 1998). Otherwise, almost all of these workers face the prospect of seeing their claims continue to "die daily." *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 260 (S.D.N.Y. 1997).

### 2. Achieving Class Certification Is Never Easy.

Plaintiffs would have faced significant challenges in obtaining (and maintaining) class certification. To begin, this case involves not only the FLSA but also the substantive laws of North Dakota, Ohio, and Pennsylvania. *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 290 (W.D. Tex. 2007) ("Because the laws of numerous states may be relevant to individual class member claims, plaintiffs would apparently face a further significant challenge to certifying the class outside the settlement context."). It is no secret that the Fifth Circuit is less than receptive to class actions. Some commentators have even referred to the Fifth Circuit as the place "class actions go to die." *See, e.g., "Lost Causes?"--Fraud Pleading in the 5th Circuit,* Jim Hamilton's World of Securities Regulation (November 12, 2008) http://jimhamiltonblog.blogspot.com/2008/11/lost-causes-fraud-pleading-in-5th.html.[4] And even the Ninth Circuit (historically considered hospitable to wage and hour class actions) has issued problematic decisions. *See, e.g., In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 571 F.3d 953 (9th Cir. 2009) (reversing certification of wage and hour class action); *see also, Duran v. U.S. Bank Nat. Assn.*, 59 Cal. 4th 1, 325 P.3d 916 (2014)(reversing certification of wage and hour class action following jury trial in favor of the plaintiffs); *see also,* Schneider & Stine, WAGE AND HOUR LAW: COMPLIANCE & PRACTICE, § 20:19.50 (courts "frequently" decertify collective actions). Thus, while Plaintiffs cer-

---

[4] Fabled attorney David Boies echoed this sentiment, noting the Fifth Circuit "is probably the worst circuit for class actions[.]" Elinor J. Brecher, *Attorney Caryl Boies dies at 48*, The Miami Herald (January 3, 2011). According to Boies: "Every lawyer in the field thinks of Fifth [Circuit] as the place where class actions go to die." *Id.*

tainly believe class certification was appropriate, Plaintiffs concede they would have faced a "significant challenge to certifying the class outside the settlement context." *DeHoyos*, 240 F.R.D. at 290

### E.   THE SETTLEMENT IS REASONABLE GIVEN THE RANGE OF POSSIBLE RECOVERY AND CERTAINTY OF DAMAGES.

"In any case there is a range of reasonableness with respect to a settlement - a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Turner*, 472 F. Supp. 2d at 849(quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "In assessing the potential range of recovery, the Court takes into account the risks involved in the litigation and the potential costs involved, and ultimately considers whether the settlement amount is fair and reasonable and falls within a reasonable range of recovery." *Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 345 (N.D. Tex. 2011). This does *not* require the Court to consider "an express estimate of the range of possible monetary recovery should plaintiffs prevail at trial." *Maher v. Zapata Corp.*, 714 F.2d 436, 460 (5th Cir. 1983); *San Antonio Hispanic Police Officers' Org., Inc. v. City of San Antonio*, 188 F.R.D. 433, 460 (W.D. Tex. 1999). This is particularly true where, as here, "estimating the range of possible recovery … is difficult." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1067 (S.D. Tex. 2012).

Further, courts recognize that parties "give and take to achieve settlements[,]" with neither ending "up with exactly the remedy they would have asked the Court to enter absent the settlement." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 656 (N.D. Tex. 2010). In other words, an assessment of the range of possible recovery is based on the realities of litigation at issue. *Cotton*, 559 F.2d at 1330(a "trial court should not make a proponent of a proposed settlement 'justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes'").

As the discussion of the risks faced by the Plaintiffs' demonstrates (*See* Section 4.D, *supra*), "the lower band of the … Plaintiffs' range of recovery is zero: a nationwide [collective action] or multi[ple] state class[es] perhaps could not be certified under Rule 23, or a judge or jury could conclude that [Aerion] was not liable." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d at 1067. Further, in the absence of the parties' agreement, the statute of limitations would continue to erode most of the Class Members' claims. Thus, whatever the range of possible recovery, it is undoubtedly diminishing with the passage of time. 29 U.S.C.A. § 256.

All that said, there can be no question this case represents fair value for the workers. According to recent empirical data, the average settlement per class member per year was $1,252. *See* Dr. Denise Martin, et al., *Trends in Wage and Hour Settlements, 2013 Update*, NERA Insight in Economics at 8 (November 2013).[5] Further, "approximately 70 percent" of wage and hour cases have an average recovery of "less than $1,000." *Id.* Thus, it is clear this settlement here provides a far greater benefit to the Class Members than the "average" wage and hour settlement. *See* Settlement at pp. 2-3 (average recovery of $4,983.86); Burch Decl. at ¶ 21-23. Thus, under any reasonable metric, the Settlement is worthy of presentation to the Class. *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) (approving $2.5 wage and hour settlement despite objectors claim that the "best possible recovery was $125 million").

## F.   THE NAMED PLAINTIFFS' ENHANCEMENT PAYMENTS ARE REASONABLE

The proposed Enhancement Awards are intended to recognize the Plaintiffs' initiative and efforts on behalf of the Class Members, and their execution of general releases (as opposed to the limited releases executed by the remainder of the Class Members). *See* Settlement at p. 3. Plaintiffs' im-

---

[5]  Available at:
http://www.nera.com/content/dam/nera/publications/archive2/PUB_Wage_and_Hour_Settlements_1113.pdf

portant contribution to the Settlement is well noted: They agreed to put their names on lawsuit and, more importantly, delayed potential resolution of their individual claims for the good of the Class Members. *See* Burch Decl. at ¶ 24. The modest amount of the payment with respect to their own claims and those of the Class (the payments represent less than 2% of the total Settlement) demonstrates the Enhancement Payments are reasonable. Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incur during class action litigation. *McClain v. Lufkin Ind., Inc.*, No. 9:97CV63, 2009 WL 5814124 at *4 (E.D. Tex. Dec. 22, 2009); see also, *Manual for Complex Litigation*, §30.42 (West Group 2001).

### G.   THE REQUESTED ATTORNEY'S FEES AND COSTS ARE REASONABLE

Plaintiffs and the Claimants are entitled to recover their attorney's fees and costs for their claims for overtime pay. *See, e.g.,* 29 U.S.C.A. § 216(b). Plaintiffs' counsel believe that the Settlement's provision concerning attorney's fees are fair and reasonable, as they are only seeking attorney's fees of just 32.83% of the Maximum Settlement Amount and reimbursement for $15,000 in expenses/costs. *See* Settlement at p. 3. Aerion does not to oppose these requests. As the Fifth Circuit has noted, the "customary contingency" for this type of litigation is "35 to 40 percent." *Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001). Indeed, the named Plaintiff entered into a fee agreement with a 40% contingency. *See* McJunkin Dec. at ¶ 17; Poncio Dec. at ¶ 19. Plaintiffs' counsel's request for a lower contingency fee certainly warrants presentation to the Class Members.

### H.   THE PROPOSED NOTICE IS REASONABLE

To protect the rights of absent class members, the court must provide the best notice practicable to class members of a potential class action settlement. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).  The primary purpose of procedural due process is to provide affected parties with the right to be heard at a meaningful time and in a meaningful manner.  It does not guarantee any particular procedure but rather requires only notice reasonably calculated to apprise interested

12

parties of the pendency of the action affecting their interests and an opportunity to present their objections. *See Id.* A class action settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Preliminary approval of the settlement will enable notice to go out to the Class Members in a manner best calculated to ensure that they are alerted to the terms of the settlement. The parties' proposed Notices – which will be sent by a qualified Claims Administrator via first class mail - provide the Class Members with adequate notice of their rights under the Settlement, including information on their estimated share and how to claim it. *See* Settlement at p. 5 & Settlement Exhibit A. Moreover, the Claim/Opt In Form is a simple one-page form that permits Class Members to claim their money quickly and easily. *Id.* at Exhibit A.

### 5. PROVISIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE

Courts are authorized to adjudicate class-wide claims based on a common course of conduct. The Supreme Court approved the use of settlement classes in appropriate cases. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997). A district court faced with a settlement-only class need not inquire whether the class would present intractable problems with trial management, but the other requirements for certification must still be satisfied. *Id.* at 620. Thus, any request for preliminary approval of a class settlement should address why certification would be appropriate, albeit within the context of a settlement.[6] Each of the requisites for class certification are satisfied here. Fed. R. Civ. P. 23.

### A. THE PROPOSED SETTLEMENT CLASSES ARE SUFFICIENTLY NUMEROUS

The numerosity requirement is met if the class is so large that joinder of all members would be impractical. Fed. R. Civ. P. 23(a)(1). In determining whether a plaintiff has satisfied the numerosity

---

[6] Defendants do not agree class certification would be appropriate absent a settlement.

requirement, a court may consider factors including the size of the class, geographical dispersion, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim. *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624-25 (5th Cir. 1999) (40 class members raises a presumption of numerosity). Smaller numbers may justify class treatment where "putative class members [are] still employed by the [defendant and] might be reluctant to file individually for fear of workplace retaliation." *Id.* at 624.

In this case, the Rule 23 sub-classes encompass dozens of class members who reside in multiple states. The personnel and payroll information exchanged in this case confirms this fact. Burch at 13. Given these facts, the numerosity requirement is met, as joinder of all of these workers as parties would be impracticable. *Mullen*, 186 F.3d at 624-25.

### B.   THE COMMONALITY REQUIREMENT IS MET

Rule 23(a)(2) requires questions of law and fact to be common to the class. "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556, 180 L. Ed. 2d 374 (2011). Common questions exist where the "failure to pay overtime … resulted from a uniform, official, corporate policy of treating [the category of worker at issue] as exempt." *Kurgan v. Chiro One Wellness Centers LLC*, 10-CV-1899, 2014 WL 642092, at *6 (N.D. Ill. Feb. 19, 2014); *In Re: Scientific Drilling International, Inc., Fair Labor Standards Act (FLSA) Litigation,* 24 F.Supp.3d 1364, 1365 (JPML June 4, 2014) (finding two actions "unquestionably share factual questions arising out of allegations that defendant has failed to pay certain employees overtime compensation in violation of the [FLSA] and [state] wage and hour laws"). For example, the administrative exemption defense raises a common question of whether the workers' duties constitute "work directly related to management policies or general business operations" of the defendant or its customers. *Heffelfinger v. Elec. Data Sys. Corp.*, 492 F. App'x 710, 714 (9th Cir. 2012) (finding this issue to be a "common question" supporting class certification).

14

Because the primary questions of law and fact central to Plaintiffs claims include whether Aerion's pay policy violated the FLSA and applicable state laws, whether the Class Members are entitled to unpaid wages under the federal and state wage law necessarily raises common question of law and fact common to all the class members. *Heffelfinger*, 492 F. App'x at 714; *Kurgan*, 10-CV-1899, *Kurgan*, 2014 WL 642092, at *6; *see also, Morris*, 859 F. Supp. 2d at 615–16 (S.D.N.Y.2012) (commonality satisfied where, among other allegations, plaintiffs claimed that defendant had a policy of not paying all class members overtime pay). Thus, for settlement purposes, the proposed class members share sufficient commonality to satisfy Rule 23(a)(2).

### C.   THE TYPICALITY REQUIREMENT IS MET

To satisfy the typicality requirement of Rule 23(a), the proposed class representatives must show their claims "are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3). The analysis focuses on whether the named representative's claims are typical, not whether the representative is. *See Stirman*, 280 F.3d at 562. The analysis is "less on the relative strengths of the named and unnamed plaintiffs' cases than on the similarity of the legal and remedial theories behind their claims." *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).

Plaintiffs meet the typicality requirement here (at least for settlement purposes) because they, like the other Class Members were not paid overtime because of Aerion' allegedly illegal policy of classifying them as exempt. Plaintiffs' legal claims here are typical of those of the class as a whole because they apply the same legal theory to the same policies and practices.

### D.   THE ADEQUACY REQUIREMENT IS MET

"Rule 23(a)'s adequacy requirement encompasses class representatives, their counsel, and the relationship between the two." *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 480 (5th Cir. 2001). With respect to the class representatives, courts consider the "[1] the zeal and competence of the representatives' counsel and ... [2] the willingness and ability of the representatives to take an active

role in and control the litigation and to protect the interests of absentees." *Id.* (citing *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982)). "Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only if those differences create conflicts between the named plaintiffs' interests and the class members' interests." *In re Reliant Energy ERISA Litig.*, CIV.A. H-02-2051, 2005 WL 2000707, at *3 (S.D. Tex. Aug. 18, 2005). Class counsel must demonstrate they are "qualified, competent, and possess the requisite experience to protect the interests of the entire class." *Burford v. Cargill, Inc.*, CIV.A. 05-0283, 2012 WL 5472118, at *2 (W.D. La. Nov. 8, 2012).

Here, Plaintiffs "possess the same interest and suffer[ed] the same injury as the class members." *Amchem*, 521 U.S. at 625–26, 117 S.Ct. 2231 (internal quotation marks omitted). Thus, Plaintiffs had the same interests, and asserted the same type of injury, as the members they seek to represent. *Id.* And Plaintiffs have shown themselves to be adequate representatives of the class, as they have devoted time and effort in prosecuting the class claims including assisting counsel with investigating the case. Further, Plaintiffs did **not** agree to an overly broad release of claims. *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 89 (E.D.N.Y. 2007) ("[t]he general release proposed by the parties in this case raises … concerns about fairness and adequacy of representation"). Rather, the release is limited to wage-and-hour claims.

As noted above, Plaintiffs are represented by Bruckner Burch, a firm with significant experience in handling large scale wage and hour litigation. *Roussell*, Case No. 09-20561, 2011 WL 4067171, at *5 (affirming jury verdict in favor of class of waiters in FLSA tip credit case); *Belt*, 444 F.3d at 405 (deciding, as a matter of first impression, that highly paid medical workers were entitled to overtime under the FLSA and affirming judgment in favor of nationwide class) as well as other lawyers with years of experience. *See* Exhibits 2-4. Further, the parties respectfully submit the size of the settle-

ment, on an aggregate and individual basis, demonstrates Plaintiffs and Class Counsel have done well for the Class Members.

### E.   PLAINTIFFS SATISFY RULE 23(B)(3)'S REQUIREMENTS.

"[Rule 23(b)(3)] encompasses those cases in which a class action would achieve economies of time, effort and expense and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Notes of Advisory Committee on Rules, 1966 Amendment. Class actions may be certified where common questions of law and fact predominate over questions affecting individual members and where a class action is superior to other means of adjudicating the controversy. The predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication. *Amchem Products, Inc.*, 521 U.S. at 623. The court must rest its examination on the legal or factual questions of the individual class members. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

Here, the alleged companywide policies affected all claims of Aerion's employees. In particular, Plaintiffs allege Aerion paid all Class Members according to the same payment plan, and denied all of them overtime based on a determination that Class Members were exempt from the FLSA and state wage laws. Thus, while there may be some variation between individual class member's claims, i.e., such as the actual amount of damages, common questions of law and fact predominate (at least for settlement purposes). *Kiefer v. Moran Foods, LLC*, 12-CV-756 WGY, 2014 WL 3882504 (D. Conn. Aug. 5, 2014) (finding similar allegations presented common questions that predominated).

The court must also consider if a class action is superior to individual suits. *Amchem Products, Inc.*, 521 U.S. at 615. The superiority requirement involves a "comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023. Here, as in *Hanlon*, the alternative methods of resolution are individual claims for relatively small amount of damages. The Class Members, by and large, worked short term assignments. These claims would "prove uneconomic for po-

tential plaintiffs" because "litigation costs would dwarf potential recovery." *Id.* at 1023. The class action device could also conserve judicial resources by avoiding the waste and delay of repetitive proceedings and prevent inconsistent adjudications of similar issues and claims. Litigation costs would surely surpass the average recover for each class member. For these reasons, as in *Hanlon*, a class action is the preferred method of resolution.

Class certification (for settlement purposes) in this case will provide substantial benefits to the litigants and the Court. The alternative to class certification here is filing dozens of individual cases in courts across the country. Individual cases would waste judicial resources and could lead to inconsistent adjudications of similar issues and claims. Many workers with relatively small claims would likely decide not to bother pursuing their claims at all. Other employees are current employees who may not be willing to risk the potential for retaliation (however unfounded their concerns might be) in order to recover unpaid wages. Aside from class treatment, a group-wide adjudication of Aerion's allegedly unlawful conduct is not available. Rather than having a multiplicity of proceedings, all involving substantially the same issues and evidence, a class action allows these matters to be resolved once on behalf of all claimants.

## 6.  CONCLUSION.

For these reasons, the proposed Settlement should be approved and the proposed classes should be certified.

Respectfully submitted,

**BRUCKNER BURCH PLLC**

/s/ Rex Burch

By: _____

Richard J. (Rex) Burch
Texas Bar No. 24001807
*Attorney-In-Charge for Plaintiffs*
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone: (713) 877-8788
Telecopier: (713) 877-8065
rburch@brucknerburch.com

## CERTIFICATE OF CONFERENCE

This motion is unopposed.

/s/ Rex Burch

_____

Richard J. (Rex) Burch

## CERTIFICATE OF SERVICE

I served this document on all parties via the Court's ECF system.

/s/ Rex Burch

_____

Richard J. (Rex) Burch